**James K. FORDHAM, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 1995.
Decided Aug. 16, 1995.

Mildred A. Molino, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before PELLEGRINI and NEWMAN, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

James K. Fordham (Fordham) appeals a decision of the Court of Common Pleas of Northampton County (trial court) affirming the Department of Transportation's (Department) revocation of his operating privileges

for a period of five years under Section 1542 of the Vehicle Code.[1]

On August 19, 1992, Fordham entered a guilty plea to the charge of driving under the influence, for which his operating privileges were suspended for a period of one year. On September 21, 1993, after his operating privileges had been reinstated, Fordham was notified by the Department that, since he had three major convictions for driving under the influence within a five year period, his driving privileges would be revoked for a period of five years effective October 25, 1993. Fordham appealed to the trial court.

In support of his appeal, Fordham presented the testimony of Joan Sofega, the Chief Deputy Clerk of Courts for Monroe County. Ms. Sofega testified that she was the only person in her office who sent notices of convictions to the Department, and that she would send these notices to the Department within a day or two of the convictions. Ms. Sofega stated that the notice of Fordham's guilty plea was received by her office on August 21, 1992, and according to her notes on the file, she had sent notification of Fordham's guilty plea to the Department on August 23, 1992. Ms. Sofega admitted, however, that she had no proof of mailing indicating when the mail room actually mailed the notice to the Department.

Fordham also testified at the hearing, stating that, at the time he entered his guilty plea, he had not been informed that he would be losing his operating privileges for five years. Fordham further testified that he had contacted the Department regarding the return of his license at least ten times during 1993, and that he had never been told that he was facing a five year suspension. Additionally, Fordham testified that, after his driving privileges had been reinstated following the one year suspension, he purchased an automobile for $7,700 and received a raise at his job. Fordham also stated that, as an auto repairman, he needed his license to test drive and inspect cars, and that, had he known that he was going to lose his license for five years, he would not have taken the job or invested $2,500 in tools for his job.

The Department presented the testimony of Darlene Ziegler, a manager of license control who was in charge of the Discrepancy and Fraud Unit of the Department. Ms. Ziegler testified that, in her position, she receives notices of convictions. Ms. Ziegler also testified to the practice of the Department of putting Work Identification Devices (WID numbers) on notices of convictions when they are received. Ms. Ziegler explained that a WID number is stamped on a notice when it is received in the Department's mail room, and by looking at the WID, one can tell when the notice was received. Ms. Ziegler explained that, according to its WID number, Fordham's notice of conviction was initially received by the Department on March 1, 1993, had been "erred back" to Monroe County two to four weeks thereafter,[2] and was again received by the Department on September 14, 1993. Ms. Ziegler further testified that, seven days later, the suspension notice was sent to Fordham. On cross-examination, Ms. Ziegler indicated that the notice of conviction was erred back to Monroe County because it contained incomplete information regarding Fordham's participation in a rehabilitation program. Ms. Ziegler further admitted that such information was not needed to revoke Fordham's license, but that it was the Department's practice to obtain such information on the notices of convictions.

The trial court, citing to the WID number on the notice of conviction sent to the Department, as well as the testimony of Ms. Ziegler, concluded that the delay in revoking Fordham's license was the result of the delay by Monroe County in sending the notice to the Department. Finding that one week of the delay was attributable to the Department, and that the Department acted

---

1. Section 1542(d) of the Vehicle Code provides that:

> The operating privilege of any person found to be a habitual offender under the provisions of this section shall be revoked by the department for a period of five years.

75 Pa.C.S. § 1542(d).

2. Ms. Ziegler explained that, if there was some error or discrepancy in the notice of conviction, the Department would "err it back" to the notifying authority so that it may be corrected.

promptly in revoking Fordham's license, the trial court upheld the revocation. Fordham appeals to this Court.[3]

A licensee challenging the revocation of his or her operating privileges under Section 1542 of the Vehicle Code[4] bears the burden of proving that:

1. There has been an unreasonable delay between his or her third conviction and the revocation of the operating privilege; and

2. That this delay caused the licensee to change his or her circumstances in reliance on the belief that his or her operating privileges would not be impaired.

*Department of Transportation, Bureau of Driver Licensing v. Turner,* 155 Pa.Commonwealth Ct. 106, 624 A.2d 759 (1993). In determining whether there has been an unreasonable delay that would void the Department's revocation of operating privileges, the relevant time period is that period between the Department's receipt of the notice of conviction and its revocation notice. *Id.* The Department must provide the licensee with notice of revocation of his or her operating privileges within a reasonable time after it receives notice of the third conviction. *Lemley v. Department of Transportation,* 97 Pa.Commonwealth Ct. 469, 509 A.2d 1380 (1986). A delay that is attributable to the judicial system and not to the Department, such as the failure of a clerk of courts to certify the conviction to the Department in a timely manner, cannot serve as a basis for the invalidation of a license revocation. *Department of Transportation, Bureau of Driver Licensing v. Green,* 119 Pa.Commonwealth Ct. 281, 546 A.2d 767 (1988), *aff'd,* 524 Pa. 98, 569 A.2d 350 (1990).

Fordham contends that he demonstrated that the delay between his guilty plea and the Department's notice of revocation was not attributable to the judicial system. Fordham argues that the testimony of Ms. Sofega, the Clerk of Courts of Monroe County, established that the notice of conviction was sent to the Department on August 23, 1992, and therefore, the delay was a result of the Department's actions.

The trial court, however, impliedly rejected Ms. Sofega's testimony regarding the date on which the notice of conviction was sent to the Department. Citing to the WID number contained in the notice of conviction, as well as Ms. Ziegler's testimony regarding the date of the receipt of the notice of conviction and the Department's need to "err back" the notice, the trial court concluded that the delay in revoking Fordham's license was attributable to Monroe County and not to the Department. Inasmuch as this determination is supported by competent evidence, we cannot disturb it on appeal.[5]

Alternatively, Fordham argues that, even if the delay between his conviction and March 1, 1993, the date indicated by the first WID number on the notice of conviction, is not attributable to the Department, the delay that resulted from the Department's erring back of the notice to Monroe County was attributable to the Department. Citing to Ms. Ziegler's testimony on cross-examination that the notice was erred back so that Fordham's completion of his rehabilitation could be included therein, and citing to Ms. Ziegler's admission that Fordham could have been notified of his license revocation prior to the completion of his rehabilitation, Fordham argues that the delay between March 1,

---

3. Our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence, whether errors of law have been committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Traffic Safety v. Loughin,* 118 Pa.Commonwealth Ct. 236, 549 A.2d 609 (1988). Moreover, in making these determinations, we must view the evidence in the light most favorable to the party prevailing before the trial court. *Department of Transportation, Bureau of Driver Licensing v. Zavodsky,* 161 Pa.Commonwealth Ct. 421, 637 A.2d 673 (1994).

4. 75 Pa.C.S. § 1542.

5. On this issue, Fordham also cites to the "mailbox rule" for the proposition that an item that is actually mailed is received by the party whom it was sent. *See Department of Transportation, Bureau of Driver Licensing v. Grasse,* 146 Pa.Commonwealth Ct. 17, 606 A.2d 544 (1991). Given that the trial court impliedly concluded that the record was not sent to the Department from Monroe County on August 23, 1992, but instead, at a later date, the mailbox rule is inapplicable to this case.

1993 and September 14, 1993 is attributable to the Department. We agree.

The time within which the Department must provide notice to a licensee that his or her operating privileges are subject to revocation begins to run when it receives notice of the licensee's conviction. Because the information regarding Fordham's completion of the rehabilitation program was not pertinent to his conviction and corresponding revocation of operating privileges, the time for the Department to give him notice began to run on March 1, 1993. The issue remaining, therefore, is whether the delay between the date the Department received the notice of conviction, March 1, 1993, and the date the Department sent the revocation notice to Fordham, September 21, 1993, was unreasonable.

While the Department is required to provide notice of revocation of a licensee's operating privileges within a reasonable time after it receives the notice of conviction, there is no clear delineation as to what, in fact, constitutes a reasonable amount of time. Rather, whether there has been an unreasonable delay between the Department's receipt of the notice of conviction and the notice of revocation to a licensee is dependent upon the particular circumstances of each case. *Department of Transportation, Bureau of Driver Licensing v. Turner*, 155 Pa.Commonwealth Ct. 106, 624 A.2d 759 (1993). However, this Court, considering only the volume of citations handled by the Department, has previously held that a five month delay between the notice of conviction and the suspension of the licensee's operating privileges was not unreasonable. *See Department of Transportation v. Russo*, 96 Pa.Commonwealth Ct. 187, 506 A.2d 1349 (1986). Likewise, the six month delay between the Department's receipt of Ford-

ham's notice of conviction and its sending of the notice of revocation to Fordham was not unreasonable.[6]

Fordham also contends that the trial court erroneously considered the testimony of Ms. Ziegler, the Department's witness, because "she did not have actual knowledge of the subject matter in question." Without referring this Court to any case law on the issue, Fordham argues that because Ms. Ziegler testified only to the WID number, and not as to when the conviction notice was actually received, such testimony was hearsay and speculative at best.

This argument, however, disregards the fact that the notice of conviction and the WID numbers placed thereon fall within the business records exception to the hearsay rule. *See Highland Park Center v. Unemployment Compensation Board of Review*, 94 Pa.Commonwealth Ct. 390, 503 A.2d 1037 (1986). Ms. Ziegler was not testifying from her personal knowledge, but instead, was testifying as to the Department's procedures regarding the placement of WID numbers on notices of convictions when they are received. Ms. Ziegler also testified as to the WID numbers on Fordham's notice of conviction, and their significance in determining when the notice was received by the Department. Because Ms. Ziegler was knowledgeable as to the process by which the Department provides notices of convictions with WID numbers upon receipt and the significance of those WID numbers in determining the date on which the notices were received, the trial court did not err in considering her testimony on those issues. *Id.*[7]

Accordingly, the decision of the trial court affirming the Department's revocation of Fordham's license is affirmed.

---

6. This conclusion is further supported by the fact that, under 75 Pa.C.S. § 1551, the Department must notify a licensee of a suspension under the points system within six months following the conviction of a violation of the Vehicle Code that resulted in the addition of the points that led to the suspension. Given the six month notice provision of that statute, we believe that it would be unreasonable for this Court to require a shorter notice period under the analogous Section 1542 of the Vehicle Code.

7. Fordham also argues that the trial court abused its discretion by not considering the prejudice he suffered as a result of the delay in notification. Because of our affirmance of the trial court on the grounds that the delay was not attributable to the Department, we need not address this issue.

## ORDER

AND NOW, this 16th day of August, 1995, the order of the Court of Common Pleas of Northampton County, at No. 1993–C–8741, dated November 18, 1994, is affirmed.