CONRAD et al., Appellants,

v.

BABCOCK et al., Appellees.

[Cite as *Conrad v. Babcock* (1997), 124 Ohio App.3d 667.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 96–P–0259.

Decided Dec. 22, 1997.

*Jay P. Porter* and *Christopher F. Swing*, for appellants.

*James R. Silver*, Kent Law Director, for appellees Susan Babcock, as Zoning Inspector for the city of Kent, and Kent Board of Zoning Appeals.

*John J. Flynn* and *Jon M. DeRhodes*, for appellee Bissler Funeral Home.

WILLIAM M. O'NEILL, Judge.

Appellants, Edward and Jane Conrad et al., appeal from a judgment of the Portage County Court of Common Pleas affirming the decision of appellee, Kent Board of Zoning Appeals ("BZA"), which permitted the expansion of a nonconforming use by appellee, Bissler Funeral Home ("Bissler"). For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Bissler operates a funeral home in a residential zoning district designated "R–2: Medium Density Residential District." As Bissler's business use of the property predates the enactment of the Kent Zoning Code, Bissler's funeral home is a nonconforming use.

Bissler sought approval for an addition to the rear of its existing nonconforming funeral home. The proposed addition, which was to cost approximately $130,000, was for a new garage in which to park vehicles and for office space. Changes to the interior of the existing building included minor alterations to the funeral home's bathrooms to accommodate the disabled and, most relevant to this appeal, the installation of a crematory in the existing garage space.

On December 5, 1995, a meeting was held before the Kent City Planning Commission ("Planning Commission") on Bissler's request for site plan review and approval to permit the enlargement of the existing nonconforming funeral home. At the meeting, the project architect, David L. Sommers, described the physical layout of the proposed expansion and answered questions from the members of the Planning Commission. There were no comments from the audience in opposition to Bissler's project. The Planning Commission unanimously approved the site plan subject to the BZA granting an expansion of the nonconforming use and on condition that the facility would not be used as a commercial crematory.

On January 22, 1996, BZA considered Bissler's request for expansion of a nonconforming use. Unlike the meeting before the Planning Commission, a number of people who live in the neighborhood near Bissler attended the BZA hearing to express their thoughts on the proposed expansion. While some neighbors expressed their approval of the expansion, others expressed their concern that Bissler was planning on installing a crematory in the existing building.

At the hearing, Sommers again described the physical layout of the new addition and explained how the exterior of the addition would match the exterior of the existing structure. He also answered questions as to additional landscaping Bissler was planning as well as answering concerns about traffic, parking, and the environmental effects of the crematory.

During the hearing, a BZA member asked if BZA was to consider the impact the proposed expansion was to have on the neighborhood. BZA was specifically told that this was an issue for the Planning Commission and not BZA. Additionally, the Assistant Law Director for the city of Kent informed the audience and the members of BZA that there was no appeal presently before BZA and that, pursuant to Kent Zoning Code 1169.04, there was only one issue to be decided in this case: whether the aggregate cost of any alterations Bissler planned, together with any alterations it performed during the previous ten-year period, exceeded the "assessed value" of the funeral home on May 15, 1985.

Kent Zoning Code 1169.04 provides as follows:

"A building or structure containing a nonconforming use may be altered, improved or reconstructed, enlarged or extended provided such work is not to an extent exceeding, in aggregate cost during any ten (10) year period, the assessed value of the building or structure on the date these regulations take effect, and provided that any enlarging or extending of such building or structure shall be approved by the Board of Zoning Appeals (which shall apply the standards listed in Section 1115.09 when reviewing the request)."

Sommers testified that Bissler had spent $21,000 on renovations to the funeral home and that with the proposed alterations, the aggregate amount that was to be spent would total $151,000. Sommers further testified that this figure was well below the "tax value" of the property in 1985 of $192,610.

Several neighboring residents, including several of appellants, expressed their belief that the issue before BZA was more than the dollar amount of the expansion. Others questioned how a crematory was allowed on Bissler's property when even a new funeral home would not be permitted in their neighborhood. Gary S. Locke, the Plans Administrator, stated that neither the Planning Commission nor BZA had the ability to pass judgment on the crematory. He

further stated that the Law Director for the city of Kent, at the beginning of the case, advised that a crematory fell under the definition of a funeral home as that term is defined by the state of Ohio.[1] Following the hearing, BZA granted Bissler's request for expansion of its nonconforming use.

On February 21, 1996, appellants, consisting of twenty-eight residents who reside near Bissler's funeral home, filed an administrative appeal in the Portage County Court of Common Pleas. After the appeal was filed, appellants moved the trial court to supplement the record, as BZA had failed to file a complete transcript of the proceedings including all of the documents presented at the hearing. The trial court granted appellants' motion, and, relevant to this appeal, tax duplicates for Bissler's property from 1985 were submitted into evidence. The records indicated a tax value of $67,420 for the land and building, which computes to a "market value" of $192,628.57. The records showed a tax value of $45,290 and "market value" of $129,400 for the building alone.

Appellants, relevant to this appeal, presented the following issues on appeal: (1) whether BZA properly interpreted and applied Kent Zoning Code 1169.04, and (2) whether BZA considered Kent Zoning Code 1115.09 when it approved Bissler's proposed expansion. On October 7, 1996, the Portage County Court of Common Pleas filed its judgment entry affirming, as modified, BZA's decision. Determining that Bissler was entitled to construct improvements on the "assessed value" of the building or structure only, the trial court authorized Bissler to construct its improvements in a total amount not to exceed $108,400.[2] Additionally, the trial court determined that Kent Zoning Code 1115.09 had no application to this case, and, to the extent some provisions of Section 1115.09 were applicable to this case, BZA considered the pertinent factors.

From this judgment, appellants filed a timely notice of appeal and now assert the following three assignments of error:

"1. The trial court erred when it concluded that the term 'assessed value' as set forth in section 1169.04 of the Kent Zoning Code, meant 'market value' instead of 'tax value,' in considering whether the estimated cost of Bissler's proposed expansion of its nonconforming funeral home, together with the cost of previous renovations, exceeded the funeral home's 1985 "assessed value."

---

1. R.C. 4717.01(C) defines a "funeral home" as "a fixed place for the care, preparation for burial, *or disposition* of dead human bodies or the conducting of funerals." (Emphasis added.)

2. $129,000, the appraised value of the building in 1985, minus $21,000, the cost of the prior improvements Bissler has performed on its funeral home the past ten years, equals the amount of the trial court's judgment.

"2.   The trial court erred when it concluded that the BZA was not required to consider each of the criteria set forth in section 1115.09 of the Kent Zoning Code, as incorporated in section 1169.04, in considering Bissler's request to expand its nonconforming funeral home.

"3.   The trial court erred when it found that the BZA, in fact, considered those criteria set forth in Section 1115.09 of the Kent Zoning Code, which the trial court arbitrarily deemed applicable to Bissler's request to expand its nonconforming funeral home."

Before reaching appellants assigned errors, we note that R.C. 2506.04 provides the standard of review applied by the trial court in reviewing a decision by an administrative agency:

"The [trial] court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."

In reviewing BZA's decision, the trial court is limited to the transcript of the proceedings before the administrative agency and evidence that has been accepted into the record pursuant to R.C. 2506.03.   The trial court must give deference to the agency's resolution of evidentiary conflicts, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268, and the court may not substitute its judgment for that of the agency, *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1116–1117.   Furthermore, the "court is bound by the nature of administrative proceedings to presume that the decision of the administrative agency is reasonable and valid." *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 456, 613 N.E.2d 580, 584.   See, also, *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400.

The standard of review at the appellate level is more limited in scope than that of the trial court.   Unless an appellate court can say, as a matter of law, that the decision of the trial court is not supported by a preponderance of the reliable, probative, and substantial evidence, or otherwise illegal, the trial court's decision must be affirmed.   *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29–30, 465 N.E.2d 848, 851–852.

In their first assignment of error, appellants argue that the trial court erred when it concluded that the term "assessed value," as found in Kent Zoning Code 1169.04, meant "market value" instead of "tax value" in considering whether the estimated cost of Bissler's proposed expansion, together with the cost of prior renovations, exceeded the funeral home's 1985 "assessed value."   As previously noted, the tax duplicate for Bissler's property from 1985 was admitted into

evidence and showed a "tax value" of $45,290 and a "market value" of $129,400 for the funeral home's building. Thus, appellants argue that Bissler's proposed expansion should be limited to $24,290 instead of the $108,400 amount the trial court approved.

In support of their positions on this subject, both parties have submitted dictionary definitions of the term "assessed value"; appellants' dictionary defining the term as the "tax value" of the property while appellees' dictionary defines the term as the "market value" of the property. Given an appellate court's limited standard of review in these matters, we would normally defer to the administrative agency's expertise in resolving these types of disputes. However, in Ohio, the term "assessed value," as utilized in this case, has a definite meaning requiring us to reverse the trial court's decision.

In *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O.2d 432, 195 N.E.2d 908, the Supreme Court of Ohio recognized that the "uniform rule" requirement of Section 2, Article XII of the Ohio Constitution requires uniformity in the valuation of real property, and uniformity in the percentage of actual value which constitutes a parcel's *assessed value*. See, also, *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 12, 12 OBR 6, 10–11, 465 N.E.2d 421, 426. The assessed value of property is thirty-five percent of its "true value." See *Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision* (1981), 66 Ohio St.2d 410, 20 O.O.3d 357, 423 N.E.2d 75. Consequently, based on the above precedent, and others, the "assessed value" of Bissler's Funeral Home equals $45,290.

Curiously, the trial court declined to follow the above precedent defining the term "assessed value," because the Supreme Court of Ohio had only defined the term "in the context of tax related controversies." However, the appraisal of property by the county auditor, and the subsequent determination of "assessed value," is inextricably intertwined with the taxation of real estate. Thus, we feel compelled to follow the definition of the term "assessed value" as set forth by the Supreme Court of Ohio. Appellants' first assignment of error has merit.

In the second and third assignments of error, appellants argue that the trial court erred in ruling that BZA was not required to consider, or that BZA actually considered, the standards as set forth in Section 1115.09 in reviewing Bissler's request to expand its nonconforming use. As appellants' second and third assignments of error are related, they will be discussed in a consolidated fashion.

As previously noted, Kent Zoning Code 1169.04 provides, in pertinent part, as follows:

"A building or structure containing a nonconforming use may be altered, improved or reconstructed, enlarged or extended provided such work is not to an

extent exceeding, in aggregate cost during any ten (10) year period, the assessed value of the building or structure on the date these regulations take effect, and provided that any enlarging or extending of such building or structure shall be approved by the Board of Zoning Appeals *(which shall apply the standards listed in Section 1115.09 when reviewing the request )*." (Emphasis added.)

Kent Zoning Code 1115.09 sets forth the powers and duties of BZA, which include three things: (1) determining "all appeals from any decision or action of the Zoning Inspector in the administration or enforcement of the Zoning Ordinance," (2) the granting of variances from the Kent Zoning Code, and (3) the power to hear and decide any question involving the interpretation of any provision of the zoning ordinance.

The powers and duties of BZA are in accordance with R.C. 713.11, which permits the creation of boards of zoning appeals and provides:

"[A] municipal corporation may create an administrative board * * * and may delegate to such board, in accordance with general rules to be set forth in the districting ordinances and regulations, the power to hear and determine appeals from refusal of building permits by building commissioners or other officers, to permit exceptions to and variations from the district regulations in the classes of cases or situations specified in the regulations, and to administer the regulations as specified therein. Such administrative powers and functions may be delegated by the legislative authority to the planning commission or board."

While BZA had the authority to administer the regulations as set forth in the Kent Zoning Code, we can find no need for BZA to approve the enlarging or extending, absent the need for a variance, of Bissler's nonconforming use. Although Kent Zoning Code 1169.04 purports to give BZA the authority to approve *any* enlarging or extending of a nonconforming use pursuant to set standards listed in Section 1115.09, Section 1115.09 provides BZA with absolutely no standards under which to perform this duty.

Appellants argue that BZA was required to apply the standards used in reviewing a request for a variance, including evidence from Bissler as to the existence of practical difficulties or undue hardship.[3] However, the standards for granting a variance were not at issue as this case has proceeded, thus far, in the courts. Bissler was only seeking to expand its funeral home for a use that was already permitted under the Kent Zoning Ordinance. Additionally, based on BZA's erroneous interpretation of the term "assessed value," Bissler did not seek

---

**3.** The Kent Zoning Code makes no distinction between a landowner seeking a use variance, which will be granted only upon a showing of "unnecessary hardship," and an area variance, which only requires practical difficulties to be established. See *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692.

a variance to expand its nonconforming use beyond the "market value" of the property in 1985.

It is apparent that appellants do not want a crematory next door to their residential homes. However, at the early stages of Bissler's request to expand its facilities, city officials determined that the installation of a crematory was an accessory use to a funeral home. At the meeting before the planning commission, open to the public, no one expressed any opposition to this opinion. Moreover, the broad language employed by the legislature to define a "funeral home," as set forth in R.C. 4717.01(C), would include as an accessory use the operation of a crematory. Consequently, Bissler did not need to seek a variance to install its crematory, and the trial court did not err in determining that the "standards" of Section 1115.09 were inapplicable to this case. Appellants' second and third assignments of error are without merit.

Based on the foregoing, the judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion. It is ordered that the parties share equally the costs of this proceeding.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

FORD, P.J., and NADER, J., concur.